**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANDAN SHENG,<br>Petitioner,<br>v.<br>JAMES JANECHA, et al.,<br>Respondents. | Case No. 5:26-cv-04351-SP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

## I.
## INTRODUCTION

On August 3, 2026, petitioner Dandan Sheng, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. Petitioner was being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. Petitioner contends her detention violates her right to procedural and substantive due process under the Fifth Amendment. The Petition is supported by the declaration of petitioner ("P. Decl.") and exhibits. Petitioner seeks immediate release from immigration custody, as well as declaratory and other injunctive relief.

On August 10, 2026, respondents filed an Answer and exhibits. Docket no. 8. Petitioner filed a Reply and exhibits the following day. Docket no. 9.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief. The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## **BACKGROUND**

Petitioner is a native and citizen of Hong Kong, a special administrative region of the People's Republic of China. Pet. ¶¶ 1, 12, 20; P. Decl. ¶ 2; Answer, Ex. A. On or about February 10, 2023, petitioner entered the United States on a B-1/B-2 visa. Pet. ¶¶ 1, 21; P. Decl. ¶ 2. Petitioner filed a timely application for asylum on June 8, 2023, which is pending. Pet. ¶¶ 1, 22, Attach. A; P. Decl. ¶ 3.

Petitioner has lived in the United States since entering. *See* Pet. ¶ 23. Petitioner married a U.S. citizen, has employment authorization, worked lawfully, and lived openly in the community. *Id*. ¶¶ 1, 23, 25, Attach. B; P. Decl. ¶¶ 4-5. Petitioner has no criminal history. Pet. ¶¶ 1, 23, 30; P. Decl. ¶ 5.

On July 31, 2026, ICE officers arrested petitioner upon her arrival at Ontario International Airport on a domestic flight.[1] Answer, Ex. A. The ICE officers did not present a judicial warrant. Pet. ¶ 28; P. Decl. ¶ 7. Petitioner did not have prior notice that she would be detained, nor was she provided an individualized custody determination. Pet. ¶ 28; P. Decl. ¶ 7.

//

//

//

---

[1] Petitioner alleges she was arrested upon her arrival at Los Angeles International Airport (Pet. ¶ 28; P. Decl. ¶ 7), but the Form I-213 shows she was detained at Ontario International Airport. Answer, Ex. A.

## III.

## DISCUSSION

Petitioner raises two claims for relief, that her detention violates her rights to procedural due process rights under the Fifth Amendment and substantive due process under the Fifth Amendment. *Id*. ¶¶ 55-60.

### A. This Court Has Jurisdiction Over the Claims in the Petition

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues she should be released from respondents' custody because her detention violates the Due Process Clause of the Fifth Amendment. *See* Pet. ¶¶ 55-60. She has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.")

(citations omitted). Because petitioner is challenging her detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B. <u>Petitioner's Detention Without Adequate Procedural Protections Violates Due Process</u>**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. <u>Petitioner Has a Protected Liberty Interest</u>**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues she has a liberty interest in her release from immigration custody. *See* Pet. ¶¶ 42, 56.

Courts have repeatedly recognized that conditional release from custody may give rise to a protected liberty interest. *See Young v. Harper*, 520 U.S. 143, 147-49 (1997) (conditional release from custody may give rise to a protected liberty interest); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Courts have found that the government's decision not to detain asylum applicants similarly gives rise to a protected liberty interest. *See Gansukh v. Warden*, 2026 WL 2962655, at *3 (C.D. Cal. Oct. 1, 2026) ("Judges throughout the Ninth Circuit have repeatedly held that a noncitizen who has lived at liberty for an extended

duration while her immigration case proceeds – pursuant to the Government's affirmative decision not to detain her – holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process.") (cleaned up and citation omitted); *Hu v. Mullin*, 2026 WL 2645532, at *3 (C.D. Cal. Sept. 8, 2026) (respondents' discretionary decision not to detain petitioner created a liberty interest while the government processed his asylum application); *Dai v. Janecha*, 2026 WL 2164154, at *1 (C.D. Cal. Jul. 24, 2026) (pursuant to the government's decision not to detain them, noncitizens have a liberty interest in their continued freedom while their immigration proceedings are pending); *Kalkan v. Chestnut*, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026) (petitioner had liberty interest in being free from detention because immigration officials were aware of his presence, initially approved of that presence, and did not promptly detain him when that status expired); *Kharitonova v. Albarran*, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (petitioner had the same liberty interest as an individual initially detained and released because the government made a decision not to detain her in the first place); *but see Jemna v. Warden of Otay Mesa Det. Ctr.*, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) ("Although Petitioner has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole.").

Here, petitioner has a liberty interest in her release. Petitioner entered the United States in 2023 on a B-1/B-2 visa, has a U.S. Citizen husband, worked lawfully, and has a pending asylum application. Pet. ¶¶ 21-23, 25. Petitioner established a life for herself in the United States and therefore has acquired a protected liberty interest in her release from immigration custody. *See, e.g., Gansukh*, 2026 WL 2962655, at *4 (petitioner, who entered on student visa and has a pending asylum application, "has a protected liberty interest in remaining out of custody"); *Xianming H. v. Warden*, 2026 WL 1283415, at *3 (E.D. Cal. May 11, 2026) (petitioner, who overstayed a tourist visa and has a pending asylum application, "has a clear liberty interest" that is protected by due process); *Al Saadi v. Larose*, 832 F. Supp. 3d 1115, 1123 (S.D. Cal. 2026) (noncitizen who entered on

a tourist visa and has a pending asylum application "has developed an interest in remaining during his time here"); *Kharitonova*, 2026 WL 531441 at *2 (same).

**2. <u>Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Detention Under the Due Process Clause</u>**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here her interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner was allowed to remain free pending her asylum application, is married, has work authorization, and established community ties. *See* Pet. ¶¶ 21-23, 25. As such, her personal interest in remaining out of immigration custody is high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any

bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents, in effect, already made such a determination with respect to petitioner when they decided not to detain her in the first place. *See, e.g., Hu*, 2026 WL 2645532, at *3; *Kalkan*, 2026 WL 7881125, at *1; *Kharitonova*, 2026 WL 531441, at *2-*3; *see also Victor B.P. v. Warden*, 2026 WL 1493987, at *4 (E.D. Cal. May 28, 2026) (state court judge's release of petitioner suggests he found petitioner was not a danger to the community). Moreover, respondents do not argue that petitioner is a danger to the community or flight risk. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. The government does not dispute that its interest in detaining petitioner without any procedural protections is low. *See Xianming H.*, 2026 WL 1283415, at *4 ("[T]he Government's interest is low."); *see also Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025) ("there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing"). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Xianming H.*, 2026 WL 1283415, at *4; *Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted). Moreover, the government has already once decided not to detain her.

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of her liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors strongly favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment. Because petitioner's detention was unlawful, the proper remedy is release from custody. *See Gansukh*, 2026 WL 2962655, at *5; *Xianming H.*, 2026 WL 1283415, at *5; *Benipal v. Rokosky*, 2026 WL 1355010, at *15 (D. Ariz. Apr. 24, 2026); *Kharitonova*, 2026 WL 531441, *1, *4; *see also Singh*, 2025 WL 3251437, at *9.

**3. <u>Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention</u>**

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted). In the context of both parole and probation revocations, the nearest analogues to petitioner's situation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See, e.g., Singh*, 2025 WL 3251437, at *8; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases). Indeed, in contexts similar to here – where an individual lawfully entered the United States, applied for asylum, and was not initially detained – courts have found that the government should provide notice and a pre-deprivation hearing to determine if the noncitizen is a danger to the community or a flight risk. *See, e.g., Yao v. Janecka*, 2026 WL 2666861, at *6 (C.D. Cal. Sept. 10, 2026); *Hu*, 2026 WL 2645532, at *4; *Al Saadi*, 2026 WL 892831, at *5; *Kalkan*, 2026 WL 788112, at *2; *Kharitonova*, 2026 WL 231441, at *4.

**C. Petitioner's Remaining Claim**

Petitioner also argues that respondents have violated her right to substantive due process under the Fifth Amendment. Pet. ¶¶ 58-60. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claim. Petitioner may raise the claim again if she is subject to any future detention.

**IV.**

**ORDER**

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Dandan Sheng (A# 242-166-356) from immigration custody; (3) petitioner's conditions of release shall be the same as those in place prior to petitioner's most recent detention; (4) respondents shall return any confiscated property and documents to petitioner upon her release; (5) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (6) respondents shall file a status report no later than **October 28, 2026,** confirming that petitioner has been released from respondents' custody.

Dated: October 23, 2026

SHERI PYM
United States Magistrate Judge